THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGEL ORTIZ, Defendant-Appellant.

First District (3rd Division)   No. 86—2718

Opinion filed May 18, 1988.

1084

Paul P. Biebel, Jr., Public Defender, of Chicago (Nancy Lipman and Frances Sowa, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Anthony J. Carballo, and Pamela Hughes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

The defendant, Angel Ortiz, was convicted in a bench trial of theft and sentenced to four years in prison. Defendant appeals on the ground that the State failed to establish the elements of the offense. Defendant also argues that the trial court applied an improper standard in finding him guilty.

Defendant was arrested and charged with burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) and theft by exerting unauthorized control over property (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)). The charges arose out of a break-in at an apartment belonging to Peggy Grafft located at 1742 North North Park in Chicago.

Arthur Carlson lived in an apartment at 1741 North Orleans, located directly behind Graft's apartment. He testified that on the morning of May 13, 1986, he was disturbed by a repeated knocking at his front door. The knocking stopped, and a few minutes later Carlson heard someone knocking at the apartment across from his and then at the apartment next to his. This knocking stopped and after a few minutes, Carlson heard someone knocking at the back door of his apartment, then at the back door of the neighboring apartment, and then again at his back door. After the knocking stopped Carlson went outside and noticed an unfamiliar car parked in front of his building. Carlson returned to his apartment and from his window he watched the car, which he described as a Chevy Nova, light blue with a primer and with a chain around the trunk. After a few minutes, he observed an individual get into the car, back the car down a one-way street, and stop in the alley in back of his building. Carlson further testified that at this point, the angle of his window allowed him to see only from the middle of the car to the passenger side. Carlson heard the car door slam and after a few minutes he saw the individual return with stereo equipment and a VCR. Carlson stated that the individual walked to the passenger side of the car and placed the items in the backseat. He stated that he also saw a second individual loading items into the other side of the car, but he could only see the arm of this second person. As he watched, Carlson telephoned the police and reported a burglary in progress, giving a description of the car and its

license plate number. The car drove away while Carlson was on the telephone, and he testified that when it drove past his window, he was able to observe the second individual. Carlson could not positively identify this individual, but he stated that defendant resembled the person he saw.

Officer Mesikapp of the Chicago police department testified that after receiving a description of the car and its license plate number, he proceeded to the area of Clybourn and North Avenues, where he observed the car travelling westbound on North Avenue. The car was stopped, and when Mesikapp approached it, he noticed several items in the backseat. Defendant and Guillermo Toro, the driver, were placed under arrest and taken to the 18th District police station.

Defendant, who had two prior convictions for burglary and attempted burglary, testified in his own behalf. He stated that on May 13 he saw Toro near North Avenue and asked him if he would drive him home. Toro agreed but stated that first he had to pick up something. Defendant testified that Toro drove around awhile and then stopped. Toro left the car, walked between two buildings, returned approximately 10 minutes later, backed the car up, and then stopped again. Defendant stated that he remained in the car while Toro entered a building. Toro made three trips to the building and each time he returned carrying video and stereo equipment, which he placed in the passenger side of the car. Defendant stated that Toro told him that he had stored the items in the building. Defendant further stated that he never physically left the car and that he remained in the front passenger seat the entire time, except when he leaned out to allow Toro to put a television set into the car.

The court found defendant not guilty of burglary, holding that there was no evidence that defendant ever entered Grafft's apartment. However, the court found that defendant was guilty of theft. In entering its judgment the court stated:

> "A person is guilty of the charge of theft when they either know or under the circumstances would reasonably believe that the property involved was stolen. See *People versus Farella,* 79 Illinois Appellate 3rd, 1980."

The court also stated that it believed Officer Mesikapp's testimony and the testimony of Arthur Carlson, but that it did not believe defendant's testimony and did not believe that defendant did not help Toro with the property.

Defendant was charged with theft under section 16—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)(1)). This section provides that a person commits theft when he knowingly

obtains or exerts unauthorized control over property of the owner with the intent to deprive the owner permanently of the use or benefit of the property. In his appeal, defendant argues that the State failed to prove that he exerted unauthorized control over the property or that he intended to deprive its owner of its use or benefit.

■■ ■ Defendant correctly argues that mere presence is insufficient to establish accountability for another's criminal acts. (See *People v. Banks* (1975), 28 Ill. App. 3d 784, 329 N.E.2d 504.) Defendant also points out that the trial court found that he was not accountable for the burglary of Grafft's apartment and claims that because there was no evidence that he exerted control over Grafft's property he cannot be held accountable for theft merely because of his presence in the car. This argument ignores both the testimony of Carlson that there were two people loading the car and the trial court's statement that it did not believe defendant's testimony that he was not helping Toro.

In the course of defendant's cross-examination of Carlson, Carlson stated, "I knew there were at least two because I saw two people loading the car." Later the following exchange took place:

"Q. You saw an arm?

A. Both seats were flipped at the time. I saw one person. I couldn't see anything but one arm. I saw the whole body of the person pushing.

Q. Where was the arm?

A. In the back seat a shoulder pushing stuff towards the back seat.

Q. There was a person inside the car as the one gentleman outside the car was throwing things in the back?

A. No, sir. As one person leaned forward in the car the doors are open, you have got the seat pushed forward, you are sticking your hand pushing stuff to the back seat. The other side of the person [*sic*] was doing the same thing. This wasn't the person sitting in the front because the seat was pushed forward. Two people outside pushing things in the back."

Further, we believe it is not unreasonable to assume that, even if defendant believed Toro was retrieving stored items, he would have assisted Toro in placing them in the car. Thus, we find that the trial court properly rejected defendant's claim that he did not help Toro.

■■ We also find that the fact that the trial court concluded that defendant was not guilty of burglary has no effect on its finding on the issue of theft. To prove theft the State was not required to show that defendant actually took the items from Grafft's apartment. All

that was required was a showing that defendant exerted unauthorized control over the property. (*People v. Alexander* (1981), 99 Ill. App. 3d 810, 425 N.E.2d 1386; *People v. Nunn* (1965), 63 Ill. App. 2d 465, 212 N.E.2d 342.) The requisite intent can be deduced by the trier of fact from the facts and circumstances surrounding the alleged criminal act. *People v. Brown* (1977), 56 Ill. App. 3d 348, 371 N.E.2d 982; *People v. Sims* (1975), 29 Ill. App. 3d 815, 331 N.E.2d 178.

■ That defendant exerted unauthorized control and his intent to deprive can be established by Carlson's testimony that two people were loading the car, defendant's testimony that he was present at the scene, and defendant's presence in the car with the stolen property when the car was stopped by the police. Although defendant provided an explanation for his presence, the trial court was not required to believe this explanation (see *People v. Ward* (1975), 31 Ill. App. 3d 1022, 355 N.E.2d 57) and, in fact, the court stated that it did not believe it. Where a defendant elects to explain his possession of stolen property, he must offer a reasonable story or be judged by its improbabilities. *People v. Moore* (1978), 61 Ill. App. 3d 694, 378 N.E.2d 516; *People v. Ward* (1975), 31 Ill. App. 3d 1022, 355 N.E.2d 57.

■ In the present case, defendant asserted that he believed that Toro was retrieving property he had stored. However, the evidence shows that defendant and Toro drove to the 1700 block of North Orleans, where Toro left the car. Carlson testified that he heard knocking at his front and back doors and the doors of his neighbors. He then looked outside and observed Toro's car stopped in front of the building. Minutes later, Carlson saw an individual get into the car and drive it to the alley between Orleans and North Park streets. Defendant testified that after Toro stopped the car the second time, Toro left the car again and went into a building. This building was located on North Park. Carlson testified that after the car stopped in the alley he observed two individuals loading stereo and video equipment into it.

Because it is unlikely that someone who stored merchandise of this type would forget where he stored it, we believe that the evidence that Toro went first to one location and then to another demonstrates the improbability of defendant's explanation and supports a finding that defendant knew the property was not Toro's. In addition, we believe that further evidence of defendant's knowledge and intent was shown by the hurried manner in which the property, which included a television set, a video cassette recorder, stereo equipment, jewelry, and other items, was removed from Grafft's apartment. Carlson testified that in the time it took him to telephone the police and

inform them of a burglary in progress, the loading was completed and the individuals got into the car and drove away. In light of these facts, we find that there was sufficient evidence that defendant knowingly and intentionally exerted unauthorized control over Grafft's property.

■ Defendant next argues that the trial court relied on an inapplicable decision in support of its finding of guilt. In entering its judgment, the trial court cited *People v. Farella* (1979), 79 Ill. App. 3d 440, 398 N.E.2d 615, a case involving theft as defined in section 16—1(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(d)). While defendant is correct in arguing that *Ferella* is inapplicable, he is incorrect in his contention that his conviction must be reversed as a result of the trial court's reliance on the case.

In reviewing a decision of the trial court, the controlling question is the correctness of the trial court's conclusion, not the validity of its rationale. (*People v. Tobe* (1971), 49 Ill. 2d 538, 276 N.E.2d 294; *People v. Bolden* (1987), 152 Ill. App. 3d 631, 504 N.E.2d 835.) It is the judgment and not what may have been said by the trial court that is on appeal to the reviewing court, and the court's judgment may be sustained on any ground discernible from the record. *People v. Bolden* (1987), 152 Ill. App. 3d 631, 504 N.E.2d 835; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.

■ In the present case, the trial court accepted Arthur Carlson's testimony that two men were loading the car and stated that it did not believe that defendant remained in the car and did not help load the property. Thus, it is clear that the trial court believed that defendant exerted unauthorized control over the property. As we stated above, the evidence was sufficient to support such a conclusion. In addition, we also found that the evidence supported a conclusion that defendant acted knowingly and intentionally. Therefore defendant was correctly convicted under section 16—1(a), and the fact that the trial court erroneously relied on an inapplicable decision does not require reversal of the conviction.

The judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE, P.J., and McNAMARA, J., concur.